UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| QUOC VIET FOODS, INC. <br><br> Plaintiff, <br><br> v. <br><br> VV FOODS, LLC, et al., <br><br> Defendants. | Case No.: SACV 12-02165-CJC(DFMx) <br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART VV FOODS' MOTION FOR SUMMARY ADJUDICATION** |

## I. INTRODUCTION

This is a trademark dispute between Plaintiff Quoc Viet Foods, Inc. ("Quoc Viet") and Defendant VV Foods, Inc. ("VV Foods"). In March 2016, the parties proceeded to trial on Quoc Viet's claim that VV Foods was infringing seven of its trademarks. On

June 14, 2016, the Court granted judgment as a matter of law for VV Foods, finding that Quoc Viet's trademarks were not protectable because they were descriptive and had not acquired secondary meaning prior to VV Foods' initial use. (*See generally* Dkt. 284.) Currently before the Court is VV Foods' motion for summary adjudication of its Third Amended Counterclaim, which seeks cancellation of 16 of Quoc Viet's trademarks—the seven that were at issue in the March trial, and nine others. (Dkt. 288.) For the following reasons, the motion is GRANTED IN PART AND DENIED IN PART.[1]

## II.  BACKGROUND

Quoc Viet and VV Foods both sell condensed bases for pho, a Vietnamese soup.[2] The traditional preparation of pho broth is extraordinarily time-consuming, so the parties devised condensed bases that, when combined with water, can be quickly turned into pho broth. The bases are sold in a number of different flavors or varieties.

Quoc Viet initially began selling its condensed soup bases in early 2002, premiering products it called COT PHO BO[3] and COT PHO GA—beef-flavored and chicken-flavored pho soup bases, respectively. Later that year, VV Foods also began selling similar products called COT PHO BO and COT PHO GA. The parties continued to develop, in parallel, additional varieties of the soup bases in the ensuing years,

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for August 29, 2016 at 1:30 p.m. is hereby vacated and off calendar.

[2] This background is drawn primarily from the Court's June 14 Order Granting Judgment as a Matter of Law. (*See generally* Dkt. 284.)

[3] As the marks at issue in this lawsuit are Vietnamese words, they carry certain accent marks, mainly over vowels. Although the Court has employed those accent marks in prior orders, it forgoes doing so now, as experience has demonstrated that the marks do not display predictably across computers and printers. No party has contended that any issue in this lawsuit turns on the presence of a particular accent mark.

including pork and vegetarian flavors. Quoc Viet, believing that it owned trademark rights in the names of its soup bases, ultimately registered a number of trademarks with the United States Patent and Trademark Office ("PTO"). It then sued VV Foods, alleging infringement of seven of its marks:

1. COT PHO BO (beef-flavored pho soup base)
2. COT PHO GA (chicken-flavored pho soup base)
3. COT BUN BO HUE (beef-flavored vermicelli soup base)
4. COT SUP HEO (pork-flavored soup base)
5. COT SUP CHAY (vegetarian soup base)
6. COT SUP GA (chicken-flavored soup base)
7. COT LAU THAI LAN (Thai soup base)

(*See generally* Dkt. 29 ["First Amended Compl." ("FAC")].) This Order refers to these seven marks as the "Underlying Cot Marks."

VV Foods counterclaimed for cancellation of the Underlying Cot Marks, as well as nine other marks that Quoc Viet says it owns and that VV Foods says it may later use:

1. COT HU TIEU (pork noodle soup base)
2. COT CANH CHUA (tamarind soup base)
3. COT BUN RIEU (vermicelli crab soup base)
4. COT SUP BO (beef soup base)
5. COT SUP HOANH THANH (wonton soup base)
6. COT SUP CA RI (curry soup base)
7. COT PHO CHAY (vegetarian pho soup base)
8. COT SINH TO (smoothie)
9. COT BO KHO (beef stock base)

(*See generally* Dkt. 69 ["Counterclaim"].)  This Order refers to these nine marks as the "Additional Cot Marks."

The parties proceeded to a jury trial on the question of VV Foods' alleged infringement of the Underlying Cot Marks.  The chief issue at trial was the meaning of the word "cot."  Basically, each of the Cot Marks adhere to a pattern: the word "cot" followed by additional words describing the flavor or type of soup base at issue.  The parties are in agreement that the non-cot words merely describe the flavor of soup at issue.  As Quoc Viet has explained,

> [A]ll of the marks that have been used in conjunction with Plaintiff's sale of its soup base products have one common characteristic; that is, the use of the Vietnamese word "COT."  The remaining words used in each of the marks specifically describes [sic] the particular soup products.  For example, with respect to the mark "COT PHO BO," the words "PHO BO" mean beef noodle soup, and with respect to the mark "COT PHO GA," the words "PHO GA" mean chicken noodle soup.  All other marks follow the same pattern.

(Dkt. 206 at 2.)  Only the meaning of the word "cot" was at issue, then, since Quoc Viet asserted that "cot" alone transformed what were otherwise ordinary descriptions of soup flavors into protectable marks.  VV Foods insisted that "cot" simply means "condensed," and therefore described the products at issue.  Quoc Viet argued that "cot" has a number of meanings in Vietnamese, including "bones of the dead," and that it could not mean "condensed" without a modifier or "head word."  This issue was paramount because if "cot" simply *described* the products at issue, the Cot Marks were "descriptive" and needed to have acquired "secondary meaning" in order to be protectable.  By contrast, if "cot" did not straightforwardly describe the products at issue, the Underlying Cot Marks may have been "suggestive" marks and therefore inherently protectable.  (*See* Dkt. 284 ["JMOL Order"] at 4–9 (canvassing trademark law).)

The Court concluded that based on the evidence presented at trial, a reasonable jury could only have determined that the Underlying Cot Marks were descriptive. The reasoning behind that conclusion is set forth at length in the Court's June 14, 2016 Order Granting Judgment as a Matter of Law. (*See* JMOL Order at 9–15.) Essentially, Quoc Viet's founder had initially told the PTO that "cot" meant "condensed or concentrated," Quoc Viet's language expert conceded twice at trial that in the context of food products, he would understand "cot" to mean "condensed," and other Quoc Viet registration activities impliedly admitted that the Cot Marks were descriptive. (*See id.*) No compelling evidence to the contrary emerged at trial, and the Court found that the Underlying Cot Marks are descriptive. (*Id.* at 15.)

The Court next noted that since the marks were descriptive, Quoc Viet bore the burden of "proving by a preponderance of the evidence that the "cot" marks had acquired secondary meaning before [VV Foods] began using the marks." (JMOL Order at 15.) On the facts of this case, the Court explained, that essentially meant proving that the Cot Marks had acquired secondary meaning during a very small window: between January 2002 at the very earliest, when Quoc Viet began using the COT PHO BO and COT PHO GA marks, and October 2002 at the very latest, when VV Foods began using those same marks. The Court found that Quoc Viet had wholly failed to demonstrate that any of the Underlying Cot Marks acquired secondary meaning between January and October of 2002. (*Id.*)

The Court did *not* concern itself with the dates that Quoc Viet and VV Foods began using other of the Underlying Cot Marks, since Quoc Viet did not show that the five later marks acquired secondary meaning regardless of whether COT PHO BO and COT PHO GA were protectable. On the contrary, Quoc Viet's case, both at trial and in its post-trial briefing, adopted an all-or-nothing approach to the Underlying Cot Marks' protectability. For example, Quoc Viet did not often differentiate among the Underlying

Cot Marks with any regularity when examining witnesses.  (*See, e.g.*, Dkt. 275-5 at *55 ["Do Examination"] ("Why did you choose to go with Quoc Viet's cot brand soup-base products?"); *id.* at *58 ["Nguyen Examination"] ("Are you familiar with the product—the soup-base product sold by Quoc Viet Foods? . . . [D]o you recall any time that you wanted to purchase Quoc Viet food products but later to be confused with another company's product?"); Dkt. 275-6 at *44 ["Rushbrook Examination"] ("[D] you associate the 'Cot' mark to represent Quoc Viet Foods' brand of soup-based products?").)

Quoc Viet's opposition to VV Foods' JMOL motion also wholly ignored the possibility that only *some* of the Underlying Cot Marks could have acquired secondary meaning.  It frequently treated the protectability of the individual Underlying Cot Marks as rising and falling as a group.  (*See, e.g.*, Dkt. 275 at 7 ("Quoc Viet presented evidence that consumers associate Quoc Viet's trademarks and branding with Quoc Viet itself.").)  Other times, it simply adopted VV Foods' approach of focusing only on January through October of 2002.  (*See, e.g.*, *id.* at 9 ("Quoc Viet presented evidence that it expended significant resources on advertising *before* VV Foods' products entered the marketplace [in 2002]."); *id.* at 10 ("Quoc Viet conducted approximately 150 demonstrations . . . before VV Foods entered the marketplace.").)  Quoc Viet made *no* effort to demonstrate, either at trial or afterwards, how the five later Underlying Cot Marks may have acquired secondary meaning if its original two marks—COT PHO BO and COT PHO GA—had not.[4]  For this reason, no reasonable factfinder could have concluded that *some* of the Underlying Cot Marks acquired secondary meaning but others did not.  That was not how Quoc Viet presented its case, and it was not what the evidence showed.  Accordingly, the Court determined that VV Foods was entitled to judgment as a matter of law as to Quoc Viet's claims for infringement of all the Underlying Cot Marks.

---

[4] Quoc Viet's opposition to VV Foods' motion for judgment as a matter of law only even mentions three of the Underlying Cot Marks by name.  (*See generally* Dkt. 275.)  There is little question that both parties conceptualized the Underlying Cot Marks' protectability as turning on whether Quoc Viet could prove that COT PHO BO and COT PHO GA were protectable.

After issuing the JMOL Order, the Court directed the parties to "jointly create and submit a proposed schedule to the Court" for adjudicating VV Foods' counterclaims for cancellation. (Dkt. 285.) The parties' schedule was to "specifically propose briefing and hearing dates for any dispositive motions on those counterclaims" and expressed optimism that, given the developed record, the Court would be able to "undertake adjudication of the counterclaims in relatively short order." (*Id.*) The parties stipulated that VV Foods would file a dispositive motion in August 2016. That motion, which seeks summary adjudication of all of VV Foods' counterclaims—i.e., both its counterclaims for cancellation of the Underlying Cot Marks and of the Additional Cot Marks—is now before the Court. (Dkt. 288.) It is GRANTED IN PART and DENIED IN PART.

## III. DISCUSSION

### A. Trademark Cancellation

"The Lanham Act authorizes district courts to order trademark cancellation in any action involving a registered mark." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000); *see also* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations."). When a court determines that a mark is unenforceable, cancellation is required. *See Gracie v. Gracie*, 217 F.3d 1060, 1065 ("[D]istrict courts have been reversed for refusing to order the cancellation of registrations for claimed marks found to be incapable of serving as valid marks."); *see also Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 869 (N.D. Cal. Jan. 3, 2012) ("Indeed, a court must cancel a registration after finding the underlying mark is unenforceable.").

//

**B.  Underlying Cot Marks**

In its June 14, 2016 Order Granting Judgment as a Matter of Law ("JMOL Order"), the Court determined that the seven Underlying Cot Marks are not valid and protectable because they are merely descriptive and did not acquire secondary meaning prior to VV Foods' initial use.  (JMOL Order at 3–4.); *see also Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 799 (9th Cir. 1970) (descriptive marks were not protectable "since there was no proof of secondary meaning prior to the . . . use . . . of defendant"); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:34 (4th ed. 2015) ("If the senior user cannot prove that its mark possessed secondary meaning at the time defendant commenced its use, there can be no infringement.").  This finding necessitates cancellation of those seven marks.  *Gracie*, 217 F.3d at 1065; *Petroliam Nasional Berhad*, 897 F. Supp. 2d at 869.  Accordingly, VV Foods' motion is GRANTED as to the COT PHO BO, COT PHO GA, COT BUN BO HUE, COT SUP HEO, COT SUP CHAY, COT SUP GA, and COT LAU THAI LAN marks.  Those marks are CANCELLED.

**C.  Additional Cot Marks**

The Additional Cot Marks present a more complicated scenario.  If those marks had been tried with the seven Underlying Cot Marks, the Court would have little difficulty cancelling them, since Quoc Viet's attempt to show that *any* of its marks had acquired secondary meaning was so inadequate, (*see* JMOL Order at 15–20).  However, Quoc Viet has not in fact had an opportunity to defend those marks' protectability.  It did not try to do so in the trial over the Underlying Cot Marks for an obvious reason: the Additional Cot Marks were not then at issue.[5]

---

[5]  Quoc Viet advances two related arguments against VV Foods' motion.  First, it says that the motion should be denied as procedurally improper, (Dkt. 292 at 5–7) apparently ignoring that the Court

VV Foods acknowledges that the Additional Cot Marks were not at issue in the March 2016 trial. Nonetheless, it argues that the Court should still cancel the Additional Cot Marks based on the results of that trial. VV Foods' logic is more or less as follows: the only thing that mattered in the March 2016 trial was the meaning of "cot," since everyone agreed that the other words in the Underlying Cot Marks were descriptive. The Court found that "cot" is descriptive in the context of condensed food products, and therefore, the Additional Cot Marks are all descriptive. The Court then found that the Underlying Cot Marks did not acquire secondary meaning prior to VV Foods' initial use because Quoc Viet failed to demonstrate that COT PHO BO and COT PHO GA acquired secondary meaning between when Quoc Viet began using those marks (roughly January 2002) and when VV Foods began using them (roughly October 2002). Because the Court was willing to rely on that initial period to determine the protectability of *all* of the Underlying Cot Marks, VV Foods argues, the Court should also rely on that period to determine the protectability of the Additional Cot Marks.

This argument misconceives the parties' relative burdens. In the March 2016 trial, Quoc Viet bore the burden of demonstrating that its marks were protectable and that VV Foods infringed them. It wholly failed to carry that burden—it could not demonstrate that COT PHO BO and COT PHO GA acquired secondary meaning in 2002, and it made essentially no effort to demonstrate that the marks it used later acquired secondary meaning even though COT PHO BO and COT PHO GA were not protectable. In these cancellation proceedings, however, VV Foods carries "both the initial burden and the ultimate burden of persuasion" to prove that the Additional Cot Marks should be

---

*explicitly permitted* this motion, (Dkt. 285). Second, Quoc Viet says that VV Foods waived its cancellation counterclaims because it did not advance them at trial. (Dkt. 292 at 23.) This argument, too, is meritless. The parties agreed, in open court and on the record, that the cancellation counterclaims would be determined by the Court *after* the jury trial. (Dkt. 293-6 at *53.) Quoc Viet does not explain how VV Foods could possibly have waived claims during a jury trial that everyone agreed would not even be at issue in that trial. In fact, as VV Foods points out, it was Quoc Viet's counsel who proposed that after the jury trial, the Court could receive briefing on the cancellation counterclaims. (*Id.* at *39.)

cancelled.[6]  2 McCarthy § 15:32.  It may not meet that burden merely by pointing out that Quoc Viet failed to prove that related marks are not protectable.  True, VV Foods may be able to rely heavily on this Court's prior determination that "cot" is descriptive in the context of condensed soup.  But any secondary meaning the Additional Cot Marks may have acquired is an issue that was never before the Court in the March 2016 trial, and VV Foods has not carried its burden of persuasion simply by pointing out that the Additional Cot Marks are in many respects similar to the later-filed Underlying Cot Marks.[7]  Instead, the Court will expect an affirmative showing that the Additional Cot Marks do not merit protection under the federal trademark laws.  VV Foods' motion is therefore DENIED as to the Additional Cot Marks.

Pursuant to the parties' agreement, (Dkt. 293-6 at *53), VV Foods' counterclaim for cancellation of the Additional Cot Marks will proceed to a bench trial.  The parties are DIRECTED to file proposed pre-trial and trial dates within fourteen days of the issuance of this Order.

The Court strongly encourages the parties to use their best efforts to resolve this matter, as further time and expense after four years of litigation does not appear to be a productive use of their and the Court's resources.

---

[6] Indeed, the Court initially separated the infringement and cancellation claims because it feared that a single jury would be confused by the "conflicting burdens." (Dkt. 293-6 at **39–40.)

[7] VV Foods also elides other differences between the Underlying Cot Marks and the Additional Cot Marks. All of the Underlying Cot Marks described condensed soup products. At least one of the Additional Cot Marks, however, pertains not to a condensed soup product, but to a "smoothie" product. (Dkt. 288-4 at 10 (indicating that the COT SINH TO mark is "for concentrates and powders used in the preparation of energy drinks and fruit-flavored beverages," among other things).) Additionally, unlike the Underlying Cot Marks, at least one of the Additional Cot Marks was not registered on the Supplemental Register (and then thereafter on the Principal Register via a § 2(f) application), but was initially placed on the Principal Register. (Dkt. 288-4 at 9.)

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. The Underlying Cot Marks, which were adjudicated in the March 2016 trial, are CANCELLED. VV Foods' counterclaim for cancellation of the Additional Cot Marks must proceed to trial.

DATED:     August 25, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE